**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | Crim. No.13-10200-GAO |
| ) | |
| **DZHOKHAR A. TSARNAEV,** ) | |
| **Defendant** ) | |

## GOVERNMENT'S OPPOSITION TO
## DEFENDANT'S MOTION TO CONTINUE TRIAL

The United States of America, by and through its undersigned counsel, respectfully opposes defendant Dzhokhar Tsarnaev's motion to delay the trial of this matter for approximately ten months.

Tsarnaev's motion to continue the trial date is really a motion for reconsideration. The trial date he now requests -- "a date on or after September 1, 2015" -- is the same date he requested originally (see Dkt. 168). The Court rejected that request as unreasonable (see Trans. 02/12/14 at 4). Now Tsarnaev has effectively moved for reconsideration of that decision. But motions for reconsideration are appropriate only under limited circumstances such as where the movant (1) presents newly discovered evidence; (2) demonstrates an intervening change of law; or (3) shows that the original decision was manifestly erroneous or unjust. United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009). None of those circumstances is present here.

In any event, it is well within the Court's discretion -- i.e. within the range of reasonable choices -- to keep the current trial

date of November 3, 2015.  Trial courts are granted broad discretion in scheduling trials and ruling on motions for continuances.  See United States v. Maldonado, 708 F.3d 38, 42 (1st Cir. 2013).  The First Circuit will not disturb a decision on a motion to continue "if reasonable minds could disagree about the proper ruling." United States v. Delgado-Marrero, 744 F.3d 167, 195 (1st Cir. 2014).

    1.  Comparison with other cases.  Tsarnaev's first argument is a largely meaningless comparison of the trial schedule in this case to that in other federal capital cases.  He writes that "the 16-month [preparation] period [in this case] is one-half the median preparation time that federal courts have allowed" in other federal capital cases since 2004.  (Deft. Mot. at 1).  But that is comparing apples to oranges.  As Tsarnaev himself concedes, "[t]here can be no uniform answer to the question of how much time is needed to prepare the defense of a capital case for trial, since each case differs in many ways from every other."  (Deft. Mot. at 3).  Without knowing all of the myriad factors that might have caused delays in those other cases, there is no sense in comparing this case to them.  Moreover, merely because they are all federal capital cases does not make them all "apples," as if that one commonality necessarily moots all of the other differences among them.  In any event, to the extent the statistic is significant at all, it undercuts Tsarnaev's argument, because it shows that this case is not an outlier but rather falls

within the preparation-time range established by other cases.

2. <u>Overseas mitigation evidence</u>.  The argument that Tsarnaev's defense team has had too little time to investigate his "life history" is unpersuasive.  For one thing, they have been investigating it virtually from the date they were appointed.  For another, the government has collected a great deal of information about Tsarnaev's life history -- including extensive interviews with individuals currently overseas -- and has produced that information in discovery.  Finally, Tsarnaev made this very same argument at the February 12, 2014, status conference (<u>see</u> Trans. 02/12/14 at 12), and the Court took it into consideration when it set the current trial date.

In addition, at least some of Tsarnaev's problems in conducting an overseas investigation arguably are of his own making.  The Russian government has notified the United States government that three named members of the defense team recently traveled to Russia for the purpose of investigating this case but represented to the Russian authorities that "the official purpose of [their] visit [was] tourism."  While conducting interviews in Russia, the members of the defense team reportedly refused to produce documents confirming their legal status and identified themselves as employees of the FBI.  As a result, the Russian government found that the defense team members had violated the Code of Administrative Offences of the

Russian Federation and expelled them.  As Tsarnaev himself acknowledges, "the extent to which the movant has contributed to his perceived predicament" is a factor the Court must consider when evaluating a request for a continuance.  <u>United States v. Saccoccia</u>, 58 F.3d 754, 770 (1st Cir. 1995).  That factor clearly militates against a continuance here.

    3.  <u>The volume of potentially relevant evidence</u>.  Tsarnaev's claim that he has been overwhelmed with evidence likewise is a problem partly of his own making.  From the very beginning of this case, Tsarnaev has demanded that the government produce essentially all of the information in its possession, despite the government's repeated advice that the vast bulk of it is irrelevant or mainly so.  At every juncture where the government has provided a relevant subset of information (<u>e.g.</u>, video and photos actually showing something of interest; digital media from family members and close friends as opposed to peripheral witnesses), Tsarnaev has invariably demanded the rest of it as well.  He now attempts to justify those demands by arguing that "[t]here is, in short, very little in this truly massive array of documentary, digital, physical and expert evidence that the defense can safely disregard without examination."  (Deft. Mot. at 10).  That is simply not true.  The mere fact that information exists, and that the government has complied with Tsarnaev's demands to produce it, does not make it potentially

4

relevant.

One purpose of setting a trial date is to force the parties to concentrate their efforts on the things that matter most and to properly prioritize the work that needs to be done to prepare for trial. Accordingly, when the Court set the current trial date at the February 12, 2014, status conference, it informed the parties: "In my experience it's not uncommon for people in cases such as this, although this is a unique case, obviously, to seek to do everything they can conceivably do." (Trans. 02/12/14 at 5-6). It then cautioned the parties "to keep in mind that not everything that can be presented for either side needs to be . . . ." (Id. at 6). That is advice Tsarnaev seems unable or unwilling to take.

An example of wasted effort is the time Tsarnaev apparently has spent investigating Ibragim Todashev, who had no connection whatsoever to the events charged in the Indictment. The Orange County, Florida Sheriff's office informed the government that defense investigators were seeking to interview a Florida police officer who was involved in the arrest of Todashev for an assault on a Florida driver. Even assuming for the sake of argument that Todashev's alleged participation in the Waltham triple homicide is in any way relevant to this case, his assault on a Florida driver assuredly is not. These are not the kinds of investigative efforts that warrant a reconsideration of the trial date.

Another example of the need to prioritize is the examination of digital information. The government recognized the potential relevance of certain items of digital information early in the case and promptly produced them so Tsarnaev would have adequate time to examine them. Specifically, on August 16, 2013 -- weeks before automatic discovery was even due -- the government produced forensic copies of the following items:

- Dzhokhar Tsarnaev's laptop computer
- Tamerlan Tsarnaev's laptop computer
- The desktop computer from 410 Norfolk Street
- A thumb drive belonging to Dzhokhar Tsarnaev
- An external hard drive belonging to Tamerlan Tsarnaev
- A thumb drive belonging to Tamerlan Tsarnaev
- Dzhokhar Tsarnaev's two cell phones
- Tamerlan Tsarnaev's two cell phones
- Three GPS devices used by the Tsarnaevs
- A SIM card from a Zubeidat Tsarnaev cell phone
- A hard drive belonging to Dias Kadyrbayev
- Dias Kadyrbayev's cell phone
- Katherine Tsaraneva's cell phone (produced on 09/03/14)

During the following month, the government also produced virtually all of the relevant video and images (including surveillance video) in the case. Tsarnaev has had ample time to conduct his own review of these materials.

The digital items Tsarnaev claims were produced too recently for him to review thoroughly -- computers belonging to Khairullozhon Matanov, Azamat Tazhayakov, Ailina Tsarnaeva, and Bella Tsarnaeva -- are items he was not entitled to in discovery in the first place,

6

and which contain virtually no pertinent evidence.  (Tsarnaev's sisters both told authorities that for years before the bombings they had little contact with their brothers or parents.)  The five cell phones Tsarnaev claims to have only recently received were made available in discovery many months ago; the only thing the government did recently was provide copies of them.  If Tsarnaev had wanted copies earlier, he should have asked for them.

To be sure, Tsarnaev could undoubtedly spend many months scouring all of the digital items seized or voluntarily provided by others in connection with this case; but his desire to do so is not grounds for continuing the trial date.  The First Circuit has made clear that trial counsel are entitled to the "time needed for *effective* preparation," Saccoccia, 58 F.3d at 770 (emphasis added), not all possible preparation, and must budget their time accordingly.

Tsarnaev also complains at length about the production of expert discovery, but those complaints -- regardless of whether they had any merit to begin with -- have been overtaken by events.  The government has isolated for Tsarnaev the expert discovery that relates to testimony it actually intends to offer at trial.  Mr. Whitehurst's work (as detailed in his affidavit attached to Tsarnaev's motion) should therefore be correspondingly simplified.  Furthermore, Tsarnaev is in no position to complain about the volume of expert discovery he received because he demanded all of it in a

7

discovery letter without regard to whether it was actually necessary or important to the preparation of the defense.  Tsarnaev should not be permitted to demand large volumes of irrelevant information and then argue that the trial must be continued so he will have time to sort through and review it all.

    4.   <u>The impact of the arrests of others on Tsarnaev's mitigation investigation.</u>  Tsarnaev's argument that the arrests of others have intimidated potential witnesses into silence is pure speculation, as Tsarnaev essentially admits.  (Deft. Mot. at 12).  His claim is entirely unsupported and therefore impossible to credit.  Assuming Tsarnaev has indeed had trouble obtaining the cooperation of potential witnesses, it could easily be because those potential witnesses have nothing to offer, or have no desire to share their recollections with him, or have something to hide; there is no basis for blaming it on fear prompted by the arrests of others.  And even assuming for the sake of argument that Tsarnaev is correct, there is no reason to believe that a continuance will change anything; potential witnesses who fear arrest are unlikely to conclude six months or even a year from now that the government has lost interest in them.  (Indeed, according to Tsarnaev's own expert, Edward Bronson, if the "story" the potential witnesses have developed is that cooperation is dangerous, the passage of time will not shake them from that belief.)

8

In sum, Tsarnaev has offered no compelling reason why the Court should reconsider its decision to begin trial on November 3, 2014. The Court set that trial date with full knowledge of the case's complexity and deemed it a reasonable time to prepare. The Court also made clear that it expected the parties to prioritize their investigative efforts and focus their attention on relevant, probative, admissible evidence. Tsarnaev has not demonstrated that despite doing so he has been unable to engage in effective preparation.

Accordingly, the government respectfully requests that the Court deny Tsarnaev's motion to delay the trial for ten months. If the Court decides that a continuance is warranted, a much briefer one should suffice.

    Respectfully submitted,

    CARMEN M. ORTIZ
    UNITED STATES ATTORNEY

By: /s/ William D. Weinreb
    WILLIAM D. WEINREB
    ALOKE S. CHAKRAVARTY
    NADINE PELLEGRINI
    Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

    I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date.

                                              */s/ William D. Weinreb*
                                              WILLIAM D. WEINREB