## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Crim. No.13-10200-GAO** |
| | ) | |
| **DZHOKHAR A. TSARNAEV,** | ) | |
| **Defendant** | ) | |

### GOVERNMENT'S OPPOSITION TO
### DEFENDANT'S SECOND MOTION TO CONTINUE TRIAL

The United States of America, by and through its undersigned counsel, respectfully opposes defendant Dzhokhar Tsarnaev's motion to further delay the trial of this matter.   In support of this opposition, the government incorporates by reference its opposition to Tsarnaev's first motion to continue [Dkt. 547], and further relies on the points and authorities cited below.

Trial courts have broad discretion in scheduling trials and ruling on motions for continuances.   See United States v. Maldonado, 708 F.3d 38, 42 (1st Cir. 2013).   The First Circuit will not disturb a decision on a motion to continue "if reasonable minds could disagree about the proper ruling."   United States v. Delgado-Marrero, 744 F.3d 167, 195 (1st Cir. 2014).

1. Volume of discovery.   Tsarnaev continues to complain about the volume of case-related information provided by the government even as he demands more and more of it.   Some of the information (particularly digital information) provided by the government in recent weeks are things Tsarnaev asked for in the past, and some are things he has asked for recently.   In both cases, virtually all of the items in question were provided by the government voluntarily, in the spirit of openness, not because their production is required by the rules of discovery.   Tsarnaev should not be heard to complain about the receipt of information that he himself has requested and that the government had no legal obligation to provide earlier (or at all).

2.      <u>Witness and exhibit lists</u>.   Tsarnaev's complaints about the preliminary witness and exhibit lists provided by the government on December 15, 2014, are not well-founded.   The government informed Tsarnaev that the vast majority of witnesses on its witness list were law enforcement agents involved in the collection, photographing, or chain of custody of evidence, and it offered to remove them from the list if Tsarnaev agreed to stipulations or some other accommodation that would obviate the need for those witnesses.   In light of the volume of evidence in this case and his refusal to enter into any stipulations, Tsarnaev can hardly have been surprised by a witness list containing a large number of evidence-handling witnesses.

The government's exhibit list identifies digital items (<u>e.g.</u>, photographs, documents, computer files) by original file name.   When the government produced these items in discovery, it either produced them with these same original file names, or it produced them with a new file name consisting of a Bates number range and provided a searchable index that matched the new file name to the original file name.

The government's exhibit list identifies each physical item by its laboratory number.   In the case of items collected by the FBI, the Laboratory number is known as a "Q" number.   The defense examined all of these items in person and was able to see each item's "Q" number at that time; in addition, the government produced photographs of each item labelled with its "Q" number; and the government produced a report (authored by FBI expert Ed Knapp) that provides a description of each "Q" item.   In the case of items collected by the Massachusetts State Police (a much smaller number), the government likewise provided the defense with reports that describe each item.

Finally, the government's exhibit list identifies each computer and cell phone file by its file name.   With limited exception, the defense has copies of all of the computers and cell phones in

question and thus can examine the items simply by accessing the device in question and looking at the named file.   For the very few files that were extracted from unallocated space and are described generically or consist of metadata on the computers, the defense will have the exhibits themselves on December 29, 2013, to compare with their own analysis of the computers which they received over a year ago.

After producing its exhibit list, the government informed the defense that it had made a good-faith effort to identify each item on its exhibit list in an understandable manner and stood ready to help the defense identify any item on the list that they could not identify on their own.   To date, the defense has not taken the government up on its offer.

3.   <u>Materials provided on December 15-18</u>.   On December 15, 2014, in keeping with the Court's scheduling order, the government provided witness-related information (so-called Jencks information) for the witnesses on its witness list for whom such material had not already been produced.   On December 18, 2014, to ensure that no disputes arise about the scope of the government's production, the government re-produced the same witness-related information in Bates-stamped form.   During December 15-18, 2014, the government also produced additional information that the defense had asked for in the past.   As noted earlier, all of this information was provided voluntarily.   The government inadvertently failed to email Tsarnaev the accompanying index that it always provides in connection with its productions, but it would have done so immediately had the defense bothered to ask for it.   As soon as the defense notified the government that it had not receive the index, the government promptly provided it.

4.   <u>Information relating to Stephen Silva</u>.   Tsarnaev's complaint about recent disclosures concerning Stephen Silva is equally unavailing.   The full extent of Silva's likely testimony was disclosed to the defense in great detail virtually as soon as Silva was arrested.   The

only newly-disclosed Silva materials are more recent statements he made that largely elaborate on his earlier statements.

5.    <u>Massachusetts Lawyers Weekly opinion piece</u>.   Tsarnaev's quotation from this opinion piece is particularly inapt.   In responding to Tsarnaev's continuing requests for information, the vast bulk of which is not required by the rules of discovery, the government has gone over and above anything the law requires.   Virtually all of the important digital evidence was produced even before the deadline for automatic discovery, and virtually all witness-related information -- including many hundreds of statements from witnesses who are not even expected to testify -- were produced many months ago.   Any suggestion that the government has engaged in "gamesmanship" or "gotcha litigation tactics" is entirely unfair and unfounded.

6.    <u>Expert witness discovery</u>.  Federal Rules of Criminal Procedure 16(a)(1)(E) - (G) define and limit the government's obligation to provide discovery, including discovery related to experts.   The defense in this case has requested, and the government has voluntarily provided, far more than those rules require.   Tsarnaev has not identified any information actually required by the Rules that the government has failed to produce in a timely fashion.   Most of the recently-produced information was provided to illustrate for the defense the government's theory of admissibility in an effort to forestall relevance (and other objections) down the road.

7.    <u>Overseas mitigation evidence</u>.   The government is unable to respond to this claim because Tsarnaev has filed his supporting materials <u>ex parte</u>.   The government, however, addressed this argument to the extent permitted by Tsarnaev's disclosures in its opposition to his first motion to continue.

8.    <u>Domestic mitigation investigation</u>.   Tsarnaev has offered no evidence, and no reason to believe, that a continuance of the trial to September 2015 -- let alone a shorter one -- will

ameliorate any problems he may be having in conducting a domestic mitigation investigation. Nor is there any reason to believe that fear of law enforcement, as opposed to antipathy for the defendant or fear inspired by his alleged crimes, is behind witnesses' purported reluctance to aid the defense.   Tsarnaev has the benefit of compulsory process if he needs the testimony of any witness during the penalty phase.

       9.    <u>Pretrial publicity</u>.  To the extent Tsarnaev's motion relies on allegations that the government has created adverse pretrial publicity through "leaks" of non-public information, the government relies on its previously-filed oppositions to Tsarnaev's motions for hearings to address those alleged "leaks."   As shown in those motions, with only one exception, there is no evidence – let alone proof – that any law enforcement officer actually associated with this case has "leaked" any non-public information to the press.   There has been no prejudicial pretrial publicity in recent months or weeks that would justify a further continuance of this case.

       Accordingly, the government respectfully requests that the Court deny Tsarnaev's second motion for a continuance.

Respectfully submitted,

CARMEN M. ORTIZ
UNITED STATES ATTORNEY

By:    <u>/s/ William D. Weinreb</u>
       WILLIAM D. WEINREB
       ALOKE S. CHAKRAVARTY
       NADINE PELLEGRINI
       STEVE MELLIN
       Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date.

*/s/ William D. Weinreb*
WILLIAM D. WEINREB