UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-10200-GAO

UNITED STATES OF AMERICA

v.

DZHOKHAR A. TSARNAEV,
Defendant.

<u>OPINION AND ORDER</u>
February 13, 2015

O'TOOLE, D.J.

Boston Globe Media Partners, LLC, as publisher of The Boston Globe newspaper (the "Globe"), has moved for a modification of this Court's order limiting public attendance in the trial courtroom during the voir dire examination of jurors. The Trustees of Boston University (d/b/a WBUR-FM) and Cable News Network, Inc. have similarly moved and have incorporated by reference the Globe's arguments, essentially moving to join the Globe's motion. I construe the motions as motions to intervene for the purpose of seeking the modification and allow the media outlets' limited intervention to the extent necessary to reach the merits of the motions for modification.

**I.      Relevant Background**

Initially both the prosecution and defense proposed conducting voir dire in a closed session.[1] (Def.'s Proposed Procedures for Jury Selection ¶ 10 (dkt. no. 681); Gov't's Proposed Jury Selection Procedures ¶ 4 (dkt. no. 687); Def.'s Resp. at 4 (dkt. no. 718).) After I noted that it was important that there be some public access to the voir dire process, the government

---

[1] The government's initial proposal suggested a group voir dire of general questions, followed by private, individual voir dire in a closed session.

proposed permitting a few members of the public, one pool reporter, and several additional people designated by the prosecution and defense teams. (Supplemental Proposal Regarding Jury Selection and Jury Questionnaire (dkt. no. 906) (under seal).) The defendant continued to resist the need for physical presence by the public in the trial courtroom during voir dire to protect the defendant's Sixth Amendment right to a fair and impartial jury. (Defense Position on Outstanding Issues Regarding Jury Selection and Jury Questionnaire (dkt. no. 907) (under seal).)[2]

Ultimately agreement was reached on the present arrangement. The prosecution and defense are each able to invite up to five members of the public to be personally present in the trial courtroom during voir dire. This accommodates the interests of both victims and the defendant's family and supporters. See Crime Victims' Rights Act, 18 U.S.C. § 3771(a)(3) (victims' right to be present); Smith v. Hollins, 448 F.3d 533, 539 (2d Cir. 2006) (defendant's right to have family and friends present). In addition, two rotating pool reporters and two sketch artists may be present in the trial courtroom.[3]

The proceedings in the trial courtroom are simultaneously streamed by a live video and audio feed into two overflow courtrooms, one reserved for media and one for the general public. The camera is positioned behind the juror, so that the juror's face is not visible to observers in the overflow courtrooms. The juror's face is visible to the pool reporters in the trial courtroom. The other participants—judge, defendant, and attorneys—are seated at a table with the juror so

---

[2] These positions were taken in filings and arguments under seal. As no substantial interests are adversely affected by the limited reference from those materials in this order, the seal is lifted for the purposes of this order to the extent necessary to permit the public discussion of the issues raised by the present motions.

[3] I understand that the media outlets have made their own determinations as to how the pool reporters would be selected and rotated. I note that Globe representatives have frequently been in the trial courtroom as pool reporters.

that their facial expressions and movements are visible to observers in the overflow courtrooms. While those observers are not able to see the juror's face, they are able to observe posture, dress, head movements, and the like. And they are fully able to hear the juror's answers to questions, including vocal inflection and other speech mannerisms.

As in any trial, jurors are afforded the opportunity to make nonpublic disclosure of certain sensitive personal information. Typically that would be done at a sidebar conference out of the hearing of the general public. Because such a sidebar conference is impracticable under the circumstances given the large number of participants present for each side, we achieve the same effect by stopping the audio transmission to the overflow courtrooms for the necessary time, and the two pool reporters leave the courtroom temporarily and return when the "sidebar" is over.

Both parties have expressed satisfaction with the arrangement in terms of the First and Sixth Amendments. Even so, the Court must ensure the defendant's Sixth Amendment right to an impartial jury and recognizes that, where it is in tension with the First Amendment rights of the public and press, careful balancing is required.

In its papers, the Globe complains of three limitations of the current arrangement: (1) the inability "to see the jurors or to assess their demeanor, body language, non-verbal expressions, or interactions with trial counsel or the Court;" (2) counsel's intermittent failure to speak into the microphone, degrading the streamed audio to the overflow courtrooms; and (3) temporary failure of the feed due to technical difficulties. (Globe's Mot. at 2 (dkt. no. 976).) To my understanding the second and third limitations have been remedied for all practical purposes for some time, and if similar issues again arise, the technicians controlling the feed have been instructed to notify the Court immediately to resolve the problem.

**II.     Discussion**

A significant portion of the Globe's motion is devoted to arguing the qualified First Amendment right of access to voir dire as established in Press-Enterprise Co. v. Superior Court, 464 U.S. 501 (1984). Unlike in that case, which involved a complete closure of voir dire proceedings, the current arrangements constitute at most a modest "partial closure," with proceedings that are substantially more open than they are closed. See id. at 512 (distinguishing "limited closure"); Bucci v. United States, 662 F.3d 18, 23 (1st Cir. 2011) (characterizing a "partial closure" as one in which "courtroom access is restricted but some members of the public are permitted to attend").

Three primary reasons guide my decision to impose the relatively minor restrictions at issue. First, careful and meaningful voir dire in this case requires a high degree of juror candor about personal history and beliefs. The experience can be intimidating for many people, especially in a high profile case. A number of prospective jurors have expressly conveyed their nervousness in answering such questions before the dozen people staring at them around the table, and there is a substantial danger that increasing the number of people in the gallery will exacerbate such feelings and interfere with the capacity of jurors to be frank. "[T]his is that unusual case where the fairness of a trial, or at least the voir dire phase, that is usually promoted by public access is seriously at risk of being impaired unless some modest limitation on access is imposed." United States v. King, 140 F.3d 76, 83 (2d Cir. 1998) (upholding complete closure).

Second, there exists in this case a risk of potential jury contamination. Prospective jurors are not being referred to by name to limit the possibility they could be identified and contacted by anyone outside the judicial process. Until the trial jury is selected and sworn, the public information value of the prospective jurors' identities is minor compared to the risk of impairing a fair and effective empanelment process.

Lastly, efficiency and courtroom manageability weigh in favor of the current arrangement. At present, when a sidebar is requested, both pool reporters are able to leave the courtroom swiftly and discreetly. The delay would be substantial if proceedings could not resume until a large group of reporters with their computers and other belongings clear and then re-enter the courtroom. Moreover, such interruptions would underscore to the juror the presence of a large number of people in the room watching and recording the juror's answers, and could thus distract and inhibit jurors from speaking candidly even more than they already are. The Globe's proposed alternatives, having eighteen media representatives in the trial courtroom, would be cumbersome and would tend to increase juror anxiety, with the risk of decreasing juror candor.

In sum, in my judgment the arrangement allowing some limited media and public presence in the courtroom while providing real-time simultaneous audio and video streaming is narrowly tailored to promote juror candor, insulate prospective jurors from extraneous influences, and achieve efficient courtroom management.

It deserves note that the arrangement has not significantly impeded the media coverage of the voir dire process.[4] I am satisfied that the procedures we have adopted accommodate the right of media access while protecting the integrity of the jury selection process and the defendant's right to an impartial jury.

### III.   Conclusion

For the foregoing reasons, the Globe's Motion to Modify Order Concerning Press Presence during Jury Selection (dkt. no. 976) and the relevant portions of the Motion of (1) Trustees of Boston University, d/b/a WBUR-FM and (2) Cable News Network, Inc. (dkt. no. 1002) are DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

---

[4] See, e.g., Twitter Feed of Milton Valencia, Boston Globe Metro Reporter, https://twitter.com/MiltonValencia (last visited Feb. 13, 2015); Twitter Feed of WBUR Live, https://twitter.com/wburLive (last visited Feb. 13, 2015); Twitter Feed of Ann O'Neill, CNN Reporter, https://twitter.com/AnnoCNN (last visited Feb. 13, 2015); Milton Valencia and Andrew Ba Tran, The Dzhokhar Tsarnaev Jury Pool, Boston Globe (Feb. 11, 2015), http://www.bostonglobe.com/metro/2015/02/11/the-potential-jurors-dzhokhar-tsarnaev-trial/spC2IAyCqUNPQouAJlwWEI/story.html (displaying an "expandable" data table for 157 jurors capturing juror number, gender, employment, opinions on guilt and the death penalty, potential bias or difficulty serving, and any conflicts, and linking relevant Tweets from juror questioning).